# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Charles P. Saulino<br>911 Harbour Bay Drive<br>Tampa, FL 33613 | )<br>)<br>)<br>) | Case No.: _____<br><br>Judge: _____ |
| Plaintiff, | )<br>) | **COMPLAINT** |
| v. | )<br>) | |
| Gene Russo<br>1150 Fox Den Trail<br>Canfield, OH 44406 | )<br>)<br>)<br>) | **INSTRUCTIONS FOR SERVICE** |
| and | )<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| Russo Builders Unlimited, Inc.<br>c/o Matthew C. Giannini<br>950 Windham Court, Ste. 5<br>Youngstown, Ohio 44514 | )<br>)<br>)<br>)<br>) | |
| and | )<br>)<br>) | |
| Dr. Chandrika P. Lakhani<br>1255 Boardman-Canfield Road, Suite 100<br>Boardman, OH 44512 | )<br>)<br>)<br>) | |
| And | )<br>)<br>) | |
| Antonio Russo<br>1130 Fox Den Trail<br>Canfield, OH 44406 | )<br>)<br>)<br>) | |
| And | )<br>)<br>) | |
| John/Jane Does Nos. 1-10<br>Name/Address Unknown | )<br>)<br>)<br>) | |
| and | )<br>) | |

G.R.P.L. Enterprises, Inc.                          )
c/o Matthew C. Giannini                             )
1040 South Commons Place, Ste. 200                  )
Youngstown, Ohio 44514                              )
                                                    )
                                                    )
       Defendants.                                  )
                                                    )

Now comes the Plaintiff, by and through undersigned counsel and for his Complaint

against Defendants hereby states the following:

## PARTIES

1.      Plaintiff, Charles P. Saulino (hereinafter referred to as "Saulino"), is an individual

who currently resides in the City of Tampa, Hillsborough County, Florida.

2.      Defendant, Gene Russo (hereinafter referred to as "Gene Russo"), is an

individual who at all times relevant to this Complaint resided in Canfield, Mahoning County,

Ohio

3.      Defendant, Russo Builders Unlimited, Inc. (hereinafter referred to as "Russo

Builders"), is a duly licensed Ohio corporation that was formed on June 21, 2000.

4.      Defendant, Dr. Chandrika P. Lakhani (hereinafter referred to as "Lakhani"), is an

individual who at all times relevant to this Complaint resided in Canfield, Mahoning County,

Ohio.

5.      Defendant, Antonio Russo (hereinafter referred to as "Antonio Russo"), is an

individual who at all times relevant to this Complaint resided in Canfield, Mahoning County,

Ohio.

6.      Plaintiff is informed and believes and there on alleges that the fictitiously-named

Defendants sued as John/Jane Does Nos. 1-10 (Herein referred to as "John/Jane Doe 1-10") are

unknown entities or individuals whose identity could not be readily ascertained despite the exercise of due diligence, but whose conduct contributed to the damages of Plaintiff. The Plaintiff will amend or supplement this Complaint to allege the true names and capacities of such fictitiously-named Defendants when the same have been ascertained.

7.      Defendant, G.R.P.L Enterprises, Inc. is a duly licensed Ohio corporation that was formed on November 7, 1991.

## JURISDICTION AND VENUE

8.      28 U.S.C. Sec. 1332 confers jurisdiction to this court. Specifically, this action is authorized pursuant to 28 U.S.C. Sec. 1332(a)(1) as the matter in controversy exceeds $75,000.00 and Plaintiff and Defendants reside in different states.

9.      Venue is proper in the Northern District of Ohio as all claims arise in the District, Defendant reside in the District and a substantial part of the events giving rise to the claims occurred in the District.

## BACKGROUND

10.      Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

11.      Saulino is an individual that owns stock in G.R.P.L. Enterprises, Inc. (hereinafter referred to as "GRPL").

12.      Gene Russo is an owner and executive officer of Russo Builders, has extensive experience in residential and commercial real estate development, owns stock in GRPL and is an executive officer at GRPL.

13.      Lakhani is a longtime physician and sophisticated businessman that practices

medicine and invests along with Russo in the Mahoning Valley, including but not limited to, his stock ownership in GRPL.

14.     Antonio Russo is an owner, executive officer and agent of Russo Builders and has extensive experience in residential and commercial real estate development throughout the Mahoning Valley.

## FACTS

15.     Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

16.     Prior to the formation of GRPL, Gene Russo sought investors for the purpose of raising money to buy raw land so that he could pursue residential development in Canfield, Ohio.

17.     Gene Russo was familiar with the development business as he had extensive experience and knowledge based upon his years as a builder in Mahoning County.

18.     Eventually, Gene Russo persuaded Lakhani, Saulino and Dr. Joseph DiDomenico (herein referred to as "DiDomenico) to invest in GRPL and certain land to develop so that the group could recoup their investment, receive profits, dividends and seek the possibility of future development opportunities.

19.     Subsequently, Gene Russo and Lakhani became intertwined in the business dealings of GRPL and began to exclude Saulino and DiDomenico from participating in the business decisions of GRPL.

20.     Gene Russo, with the help of Lakhani, used their block of stock to force GRPL to give Gene Russo exclusive control of pricing of the land owned by GRPL and to make Russo Builders the exclusive builder of homes within Fox Den, the residential development owned by

GRPL.

21.     Gene Russo used this authority to sell GRPL plots of land in the development which became known as "Fox Den" to Russo Builders well under fair market value in order to increase the profitability of Russo Builders and to divert profits from GRPL.

22.     Gene Russo unilaterally made decisions that served to benefit his "self interest," the interests of Russo Builders, the personal interests of his son, Antonio Russo and Lakhani while knowing such decisions were detrimental to GRPL and Saulino's stock ownership.

23.     Gene Russo, Lakhani, Antonio Russo and Russo Builders accomplished this by taking a series of steps that seemed innocent to Saulino but were undertaken to mask an elaborate scheme of diverting all potential profits away from GRPL to the benefit of Gene Russo, Antonio Russo, Russo Builders, Lakhani and the family members of Lakhani and the Russo's.

24.     Gene Russo and Lakhani provided false and misleading information to Saulino in regards to the actual value of the land and schemed to divert further benefits to their own family members by paying referral fees to Lakhani's family and making a Russo family member the exclusive real estate agent for the sale of land.

25.     Gene Russo and Lakhani, put with the assistance of Antonio Russo, concealed the acceptance of cash payments by clients and contractors.

26.     In the fall of 2015, DiDomenico tired of his involvement in GRPL and sought to sell his interest.  Didomenic consulted with an accountant to perform an audit of the business and determine the value of his interest in GRPL.

27.     Through the audit, DiDomenico and Saulino discovered that Gene Russo and Lakhani intentionally withheld pertinent financial information for a period of years and misled

the shareholders as to the legitimate financial condition of the company.

28.     After discovering the discrepancies in the accounting, Saulino and DiDomenico approached Gene Russo and Lakhani to discuss possibly liquidating the property.

29.     Gene Russo and Lakhani refused to discuss a potential liquidation.

30.     Subsequently, Gene Russo and Lakhani offered to "buyout" DiDomenico.

31.     DiDomenico accepted the buyout and sold his shares to Gene Russo and Lakhani.

32.     Gene Russo and Lakhani did not offer Saulino the option to participate in the buyout of DiDomenico even though it was being accomplished at an extreme discount and the GRPL corporate documents clearly state that GRPL has a "first right of refusal" for the sale of member shares.

33.     Gene Russo and Lakhani have refused to make themselves available to discuss the ongoing issues, provide a accurate and legitimate accounting and have refused to address Saulino's request that Gene Russo relinquish his corporate authority and to undo the resolution making Russo Builders the exclusive builders for GRPL owned developments.

34.     Saulino owns a minority share of GRPL.

35.     Saulino is being oppressed by Gene Russo and Lakhani as they have acquired a majority of shares in GRPL and are using that majority stake to harm the interests of Saulino.

## FIRST CLAIM
### Breach of Fiduciary Duty

36.     Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

37.     As a director and officer of GRPL Corporation, the Ohio Revised Code imposed

upon Gene Russo a duty to act in good faith and take actions that were reasonably believed to be in or not opposed to the best interest of the corporation. Such directors are to exhibit the care that an ordinary, prudent person in a like position would exercise under similar circumstances.

38.   By engaging in the acts or omissions as described herein, Gene Russo as a director and officer of the corporation breached his respective fiduciary duties to the corporation and its shareholders.

39.   Said acts or omissions as described herein were committed deliberately to injure Saulino or with reckless disregard for the best interests of the corporation and Saulino.

40.   Gene Russo's breach of his fiduciary duties as described herein directly and proximately caused harm to Saulino and GRPL in the way of lost profits; lost distributions; lost share value; diminished good will and equity; increased debt; legal fees and related costs.

## SECOND CLAIM

### Breach of Fiduciary Duty

41.   Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

42.   As a director and officer of GRPL Corporation, the Ohio Revised Code imposed upon Lakhani a duty to act in good faith and take actions that were reasonably believed to be in or not opposed to the best interest of the corporation. Such directors are to exhibit the care that an ordinary, prudent person in a like position would exercise under similar circumstances.

43.   By engaging in the acts or omissions as described herein, Lakhani as a director and officer of the corporation breached his respective fiduciary duties to the corporation and its shareholders. Said acts or omissions as described were committed deliberately to injure Saulino

or with reckless disregard for the best interests of the corporation or Saulino.

44.   Lakhani's breach of his fiduciary duties as described directly and proximately caused harm to Saulino and GRPL in the way of lost profits; lost distributions; lost share value; diminished good will and equity; increased debt; legal fees and related costs.

## THIRD CLAIM
### Usurpation of Corporate Opportunity

45.   Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

46.   As a director and officer of GRPL, Ohio law imposes upon Defendant Gene Russo the duty of loyalty, the duty to refrain from self-dealing, and duty of disclosure. By engaging in the acts or omissions described herein, Gene Russo as a director and officer of GRPL breached his respective duties to be loyal, to fully disclose and to refrain from self-dealing.

47.   By allowing Russo Builders to be the exclusive builder in the land development project, Gene Russo made business decisions in the best interest of Antonio Russo, Russo Builders and himself.

48.   Gene Russo acquired information about various opportunities while acting on behalf of GRPL and such opportunities were squarely within GRPL's line of business and would have benefited the corporation.

49.   Furthermore, by selling plots of land for less than fair market value and having Russo Builders construct homes on said land, Gene Russo diverted revenue and profits from GRPL to Russo Builders and Antonio Russo, Gene Russo did not act in good faith or for the best interest of GRPL and Saulino.

50. Gene Russo's breach of his duties of loyalty, disclosure and self-dealing directly and proximately caused harm to GRPL and Saulino in the way of lost profits; lost distributions; lost share-values; diminished good will and equity; increased debt; legal fees and related costs.

### FOURTH CLAIM
#### Fraudulent Concealment

51. Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

52. Subsequent to the January 25, 2000 meeting held by the Board of Directors of GRPL, and while negotiating on behalf of GRPL, Gene Russo purposely failed to disclose pertinent details regarding land transactions to Saulino.

53. The pertinent details which Russo failed to disclose were material to each transaction of residential land and to the business dealings of GRPL.

54. Gene Russo concealed the fact that GRPL was entering into land transactions with buyers where Gene Russo, Lakhani, Antonio Russo and Russo Builders would conspire to sell plots of residential property owned by GRPL below the fair market value in order to divert profits to Russo Builders, Gene Russo, Antonio Russo and Lakhani by intentionally misleading the owners of GRPL as to the true value of the residential lots and land owned by GRPL.

55. The owners of GRPL relied upon Gene Russo's years of knowledge and experience as a developer and contractor.

56. Saulino trusted that Gene Russo was negotiating on behalf of GRPL with the best interest of GRPL in mind when it came to the pricing and the sale of the GRPL residential lots.

57. Gene Russo knew that had the truth about his intentions been disclosed, Saulino would not have invested in GRPL, would not have continued to support GRPL by signing loan

documents, would not have contributed capital to the company and would not have allowed Gene Russo to exercise corporate authority.

58.   Gene Russo intended to induce Saulino based on these misrepresentations and improper disclosures pertaining to the value of GRPL assets and it profitability.

59.   Based upon Gene Russo's knowledge and experience, it was justifiable for the Saulino to rely upon Gene Russo to diligently and vigorously advocate on behalf of GRPL when the owners granted Gene Russo authority to price, market and sell company owned lots.

60.   Saulino's reasonable reliance upon these misrepresentations was detrimental.

61.   But for this failure to disclose the true and material terms of the land transactions Saulino could have been alerted to Gene Russo's improper dealings, Saulino would have known Gene Russo and Lakhani's true intentions and prevented profits of GRPL from being diverted.

62.   Gene Russo was aware of the misrepresentations and benefitted from them.

63.   As a direct and proximate result of the misrepresentations and concealment, Saulino has not recouped his investment, has lost profits, incurred professional costs and attorney's fees.

64.   Gene Russo's actions were malicious and done willfully, in conscious disregard to the financial well-being of Saulino.

65.   As such, Saulino is entitled to recover, in addition to actual damages, punitive damages to punish Gene Russo and to deter him from engaging in future misconduct.

## FIFTH CLAIM
### Fraudulent Concealment

66.   Saulino restates and realleges each and every allegation contained above as if

expressly rewritten herein.

67.  Subsequent to the January 25, 2000 meeting held by the Board of Directors of GRPL, and while negotiating on behalf of GRPL, Russo and Lakhani purposely failed to disclose pertinent details regarding land transactions to the other members of GRPL.

68.  The pertinent details which Lakhani failed to disclose were material to each transaction of residential land.

69.  Specifically, Lakhani concealed the fact that they were entering into land transactions with buyers where Russo, Lakhani and Russo Builders would conspire to sell plots of residential property owned by GRPL below the fair market value in order to divert profits to Russo Builders.

70.  Russo and Lakhani intentionally misled the Saulino as to the true value of the residential lots and land owned by GRPL.

71.  Saulino relied upon Russo's years of knowledge and experience as a developer and contractor and was misled by the false information and statements of Russo.

72.  Saulino trusted that Russo was negotiating on behalf of GRPL with the best interest of GRPL in mind when it came to the pricing and sale of the GRPL residential lots.

73.  Russo and Lakhani knew that had the truth about their intentions been disclosed, Saulino would not have invested in GRPL and would not have continued to support GRPL by signing loan documents and contributing capital to the company when necessary.

74.  Russo intended to induce Saulino based upon these misrepresentations and improper disclosures pertaining to the value of GRPL assets and its profitability.

75.  Based upon Russo's knowledge and experience, it was justifiable for the Saulino

to rely upon Russo to diligently and vigorously advocate on behalf of GRPL when the members

granted Russo authority to price, market and sell company owned lots.

76.    Saulino's reasonable reliance upon these misrepresentations was detrimental.

77.    But for this failure to disclose the true and material terms of the land transactions

Saulino would have been alerted to Russo's improper dealings, Saulino would have known

Russo's true intentions and prevented profits of GRPL from being diverted. Russo was aware of

the misrepresentations and benefitted from them.

78.    As a direct and proximate result of the misrepresentations and concealment,

Saulino has not recouped his investment, has lost profits, incurred professional costs and

attorney's fees.

79.    Russo's actions were malicious and done willfully, in conscious disregard to the

financial well-being of Saulino.

80.    As such, Saulino is entitled to recover, in addition to actual damages, punitive

damages to punish Russo and to deter him from engaging in future misconduct

## SIXTH CLAIM
### Ohio R.I.C.O.

81.    Saulino restates and realleges each and every allegation contained above as if

expressly rewritten herein.

82.    Defendants constitute an ongoing group of persons or entities associated in fact,

and can for the purpose of this Complaint be defined as an "enterprise" pursuant to R.C.

§2923.31(C) (hereafter referred to as the "Enterprise").

83.    Defendants are or were, at all times relevant to this Complaint, members affiliated

directly or indirectly with the "enterprise".

84. Defendants, while associated with the Enterprise, conducted or participated in, directly or indirectly, the affairs of the Enterprise through a pattern of corrupt or racketeering activity, as defined by R.C. §2923.31(E) and (I)(1)(2)(a)(b) and (c) in violation of R.C. §2923.32(A)(2) and (3).

85. The specific acts constituting corrupt or racketeering activity are set forth above in the factual section of this Complaint, and include, but are not limited to a violation of R.C. §2913.42 (tampering with records).

86. Defendants aided, planned, conspired or agreed that one or more of the Defendants would engage in the pattern of corrupt activity in violation of R.C. §2923.01 (conspiracy).

87. Many of the acts of the Defendants were performed with malicious purpose, in bad faith, in a reckless or wanton manner, or with a conscious disregard of the rights of Saulino.

88. The Defendants, and particularly Gene Russo, Antonio Russo and Russo Builders knowingly received monetary benefits, by depriving Saulino of his investment, through a pattern of corrupt activity as set forth herein in the preceding paragraphs; and used or invested, directly or indirectly, part or all of the money in the operation of the Enterprise in violation of R.C. §2923.32(A)(3).

89. The acts or omissions of the Defendants arise out of their collective business relationship with each other and the stock ownership and management of G.R.P.L.

90. Pursuant to R.C. §2923.34(B), Saulino is entitled to compensation for the damages he has incurred as a result of the Defendant's pattern of corrupt activity.

91.  Pursuant to R.C. §2923.34(C) and (E), Saulino is entitled to treble damages of any and all actual damages proven.

92.  Pursuant to R.C. §2923.34(G) and (H), Saulino is entitled to reasonable attorney fees, litigation costs and expenses.

## SEVENTH CLAIM
### Conversion

93.  Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

94.  The funds invested into GRPL were the property of the corporation and the land acquired with those corporate funds also became an asset of the corporation. Gene Russo used GRPL assets, in particular, the land purchased to bolster the financial gain of Russo Builders as he sold land for under the market value, and diverted profits due GRPL to himself and Russo Builders.

95.  Gene Russo's willful, wanton and wrongful acts as described herein dispossessed GRPL of its profits and to the detriment of Saulino and GRPL, but to the benefit of Russo, Lakhani and Russo Builders.

96.  Upon Gene Russo's conversion of the GRPL's land assets as described herein, the true value, including profits, became unavailable for GRPL to use.

97.  As such, Saulino, as a member of GRPL has been damaged and has suffered financial harm.

## EIGHTH CLAIM
### Conversion

98.  Saulino restates and realleges each and every allegation contained above as if

expressly rewritten herein.

99.  The funds invested into GRPL were the property of the corporation and the land acquired with those corporate funds also became an asset of the corporation.

100. Lakhani diverted profits derived from the corporation in the form of alleged referral fees to which he paid to family members.

101. Lakhani's willful, wanton and wrongful acts as described herein dispossessed GRPL of its profits and to the detriment of Saulino and GRPL, but to the benefit of Gene Russo, Lakhani Antonio Russo and Russo Builders.

102. Upon Lakhani's conversion of the land-assets as described herein, the true value, including profits, became unavailable for GRPL to use.

103. As such, Saulino, as a member of GRPL has been damaged and has suffered financial harm.

## NINTH CLAIM
### Conversion

104. Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

105. The funds invested into GRPL were the property of the corporation and the land acquired with those corporate funds also became an asset of the corporation.

106. Antonio Russo diverted profits derived from the corporation in the form of alleged referral fees to which he paid to family members.

107. Antonio Russo's willful, wanton and wrongful acts as described herein dispossessed GRPL of its profits and to the detriment of Saulino and GRPL, but to the benefit of

Gene Russo, Lakhani, Antonio Russo and Russo Builders.

108. Upon Antonio Russo's conversion of the land-assets as described herein, the true value, including profits, became unavailable for GRPL to use.

109. As such, Saulino, as a member of GRPL has been damaged and has suffered financial harm.

## TENTH CLAIM
### Dissolution

110. Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

111. Saulino has a minority ownership stake in GRPL.

112. Pursuant to Section 1701.91(A)(2) of the Ohio Revised Code, the objectives of the GRPL have wholly failed, are entirely abandoned, and their accomplishment is impracticable.

113. Saulino has not profited from GRPL at any time since investing in the residential development and Gene Russo and Lakhani have used their collective interests in a manner contrary to the stated objectives of GRPL.

114. It is impracticable for GRPL to thrive and become viable as Gene Russo and Lakhani have continuously misled Saulino and acted to the detriment of the company.

115. As a direct and proximate result of GRPL's lack of profitability, Saulino has been harmed and seeks dissolution of the corporation and the liquidation of its remaining assets.

## ELEVENTH CLAIM
### Action for Accounting

116. Saulino restates and realleges each and every allegation contained above as if

expressly rewritten herein.

117. The Defendants' Gene Russo and Lakhani, as officers, directors and shareholders with fiduciary duties owed to GRPL and Saulino have not accounted for the benefits received due to the aforesaid acts or omissions as described herein.

118. Saulino, due to the fiduciary duties existing between the parties and Defendants' Gene Russo and Lakhani breach of the fiduciary duties owed to GRPL and Saulino is entitled to a full accounting of all benefits received by the Defendants due to the aforesaid acts of omissions as described herein.

119. Without completing an audit, it is impossible to determine, either in whole or in part, the full amount of the claims against Russo and Lakhani.

## TWELVTH CLAIM
### Punitive Damages

120. Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

121. Gene Russo acted intentionally, wantonly and with actual malice in that his conduct was undertaken in conscious disregard of Saulino's rights and with a high probability of causing substantial harm to Saulino; and, Saulino was, in fact, harmed by the conduct.

122. As a result of the conduct of Gene Russo, Saulino is entitled to an award of punitive damages.

## THIRTEENTH CLAIM
### Punitive Damages

123. Saulino restates and realleges each and every allegation contained above as if

expressly rewritten herein.

124. Lakhani acted intentionally, wantonly and with actual malice in that his conduct was undertaken in conscious disregard of Saulino's rights and with a high probability of causing substantial harm to Saulino; and, Saulino was, in fact, harmed by the conduct.

125. As a result of the conduct of Lakhani, Saulino is entitled to an award of punitive damages.

**FOURTEENTH CLAIM**
**Punitive Damages**

126.  Saulino restates and realleges each and every allegation contained above as if expressly rewritten herein.

127.  Antonio Russo acted intentionally, wantonly and with actual malice in that his conduct was undertaken in conscious disregard of Saulino's rights and with a high probability of causing substantial harm to Saulino; and, Saulino was, in fact, harmed by the conduct.

128.  As a result of the conduct of Antonio Russo, Saulino is entitled to an award of punitive damages.

**WHEREFORE**, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an order granting them the following relief:

a.    A decree judicially dissolving GRPL; the appointment of a receiver to protect GRPL's corporate property and the rights of unrelated parties; and to carry on GRPL's business until a full hearing on Plaintiff's Complaint may be had.

b.    compensatory damages for Plaintiffs in an amount in excess of $75,000.00, plus interest at the legal rate of interest;

c.  Punitive damages in an amount in excess of $75,000

d.  attorney fees;

e.  the costs of this action; and

f.  any other remedies the court deems equitable and just.


Respectfully submitted,

**BETRAS, KOPP & HARSHMAN, LLC**


_____s/Brian P. Kopp_____
**Brian P. Kopp (0064897)**
**Frank L. Cassese (0092991)**
Attorneys for Plaintiff
6630 Seville Drive
Canfield, Ohio
PHONE (330) 746-8484
bkopp@bhlaws.com
fcassese@bhlaws.com


## **JURY DEMAND**

Plaintiff hereby demands trial by jury.


_____s/Brian P. Kopp_____
Brian P. Kopp
Frank L. Cassese
Attorneys for Plaintiff

## INSTRUCTIONS FOR SERVICE

Please serve a copy of the foregoing Complaint, along with Summons, upon the

Defendant at the addresses noted in the caption, by certified mail, return receipt requested, and

make return according to law, all pursuant to Civ.R. 4.1.


                                                                        s/Brian P. Kopp

**Brian P. Kopp**
**Frank L. Cassese**
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Charles P. Saulino, individually
and as Member of G.R.P.L. Enterprises, Inc.

      Plaintiff,

v.                            CIVIL NO.

Gene Russo, et al.

      Defendants.

## AFFIDAVIT OF CHARLES P. SAULINO

I, Charles P. Saulino, ("Saulino"), being duly sworn and cautioned, states as follows:

1.     I am a resident of Tampa, Florida.

2.     I am a businessman that owns stock in G.R.P.L. Enterprises, Inc. (hereinafter referred to as "GRPL").

3.     I was approached by Gene Russo, a local contractor, who sought investors for the purpose of raising money to buy raw land and pursue residential development in Canfield, Ohio.

4.     Russo was familiar with the development business and had extensive experience and as a builder in Mahoning County.

5.     I, along with Dr. Chandrika P. Lakhani ("Lakhani"), Dr. Joseph Didomenico ("Didomenico), and Russo invested in GRPL.

6.     I invested in GRPL based upon Gene Russo's assurances that I could recoup the investment, receive profits, dividends and participate in future development and construction opportunities.

7.     On or about September 3, 1994, Gene Russo Construction Company, an Ohio corporation, and G.R.P.L. Enterprises, Inc. entered into a written agreement where Russo

Builders would be the exclusive contractor of GRPL for the construction of any and all residential homes in any real estate development currently owned by GRPL.

8.      I agreed that GRPL would compensate Russo Builders, Inc. for construction of residential homes in a sum to be "mutually determined" prior to the construction of each respective residential home, based upon the cost of construction of the Residential home and the price of the home to the ultimate consumer.

9.      On or about January 25, 2000, the Board of Directors of GRPL held a special meeting as to where GRPL delegated to Russo "relevant to the purchase of real estate and construction of homes, the sole right and ability to negotiate contracts on behalf of GRPL for the sale and purchase of any real estate and for the construction of any buildings including homes on currently owned real estate or subsequently owned real estate."

10.     Gene Russo did not act in good faith while negotiating contracts on behalf of GRPL in that he failed to properly compensate shareholders for monies owed pursuant to the terms of the operating agreement.  Gene Russo failed to make capital contributions to GRPL and violated the terms of the operating agreement by purchasing certain shares of corporate stock, without allowing the shareholders of GRPL to exercise their right of first refusal.

11.     Gene Russo and Lakhani became intertwined in the business dealings and began to exclude Didomenico and myself from participating in the business decisions of GRPL.

12.     Gene Russo acted unilaterally and made decisions that served to benefit his "self interest," the interests of his construction company, Russo Builders, as well as the personal interest of Lakhani.

13.     Gene Russo sold plots of land in the development which became known as "Fox Den" well under fair market value in order to increase the profitability of Russo Builders.

14.     Gene Russo, Lakhani and Russo Builders accomplished this by taking a series of steps that seemed innocent to me, but were undertaken to mask an elaborate scheme of diverting

all potential profits away from GRPL to the benefit of Russo, Russo Builders, Lakhani and the family members of Lakhani and Gene Russo and to defraud the remaining shareholders of GRPL.

15.     Gene Russo and Lakhani used their block of stock to force GRPL to give Gene Russo exclusive control of pricing of the land owned by GRPL and to make Russo Builders the exclusive builder of homes within Fox Den.

16.     Gene Russo and Lakhani provided false and misleading information to me in regards to the actual value of the land and schemed to divert further benefits to their own family members by paying referral fees to Lakhani's family and making a Russo family member the exclusive real estate agent for the sale of land.

17.     Gene Russo and Lakhani concealed the acceptance of cash payments by clients and contractors to the detriment of GRLP and its remaining shareholders.

18.     In the fall of 2015, Didomenico consulted with an accountant to perform an audit of the business and determine the value of his interest in GRPL.

19.     Based on the results of the audit, I became aware that Russo and Lakhani withheld pertinent financial information in regards to GRPL and misled me as to the legitimate financial condition of the company.

20.     The audit indicated that since 2011, Gene Russo and Lakhani have concealed pertinent information that pertained to GRPL in order to divert funds due GRPL and its remaining investors.

21.     Through the audit, it was discovered that on numerous sales of different plots of land beginning in 2012 and continuing until now, Gene Russo, Lakhani, Antonio Russo and Russo Builders concealed pertinent information affiliated with the transactions. Specifically, Russo Builders financial ledger fails to disclose certain financial information such as, settlement charges, construction costs and net profits.

22.     I further discovered that Gene Russo was depositing funds that belonged to GRPL into the same bank account that he deposited funds for his construction company, Russo Builders.

23.     After the audit, Didomenico accepted a buyout and settled with Russo and Lakhani.

24.     Gene Russo and Lakhani did not adhere to the corporate documents of GRPL and did not offer me the option to participate in the buyout of Didomenico even though it was being accomplished at an extreme discount and GRPL was to have "first right of refusal" on the sale of member shares.

25.     Liquidation of the land owned by GRPL is necessary to prevent continued self dealing and use of majority ownership of GRPL to prevent me from sharing in the benefits of the corporation.

26.     As of today's date, I have not recouped my investment, received profits or dividends and have not been presented with any additional development opportunities and have been financially damaged as a result of the fraudulent dealings set forth herein.


FURTHER AFFIANT SAYETH NAUGHT.

_____
Charles P. Saulino


Sworn to me and subscribed in my presence this 20 day of April, 2016.

_____
Notary Public
My commission expires January 5, 2019

BRET DeGAILLER - NOTARY PUBLIC
My Comm. Expires 01-05-19
NO. FF 186516
STATE OF FLORIDA